<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JAZZ PHOTO CORP., through its Liquidating Trustee
BRIAN T. MOORE,

               Plaintiff,

      v.

KAPLAN & GILMAN, L.L.P.

               Defendant.

CIVIL ACTION NO. 06-1793
(DRD)

**OPINION**

<u>Appearances</u>

BUDD LARNER, P.C..
Donald P. Jacobs, Esq.
Peter J. Frazza, Esq.
150 John F. Kennedy Pkwy
Short Hills, NJ 07078
     *Attorneys for Plaintiff*

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Thomas F. Quinn, Esq.
John P. O'Tool, Esq.
33 Washington St
Newark, NJ 07102
     *Attorneys for Defendant*

### *OPINION*

**<u>DEBEVOISE, Senior District Judge</u>**

     Jazz Photo, Inc. ("Jazz"), through its liquidating trustee Brian T. Moore, is suing

Defendant Kaplan & Gilman, LLP ("KG") (known now as Kaplan Gilman Gibson & Dernier,

LLP) for committing legal malpractice during its representation of Jazz following the decision in

Jazz Photo Corp. v. ITC, 264 F.3d 1094 (Fed. Cir. 2001) ("Jazz v. ITC").  Jazz alleges that KG committed malpractice by failing to argue the "prospective only" effect of that decision in the "Combined Petition for Rehearing and Suggestion for Rehearing En Banc" ("the Petition") filed after the Court issued its Opinion.  Jazz also argues that KG committed malpractice by not arguing in the Petition, that the patent-holder, Fuji Photo Corp. ("Fuji") had waived its right to receive the benefit of the Court's decision because the Court of Appeals for the Federal Circuit raised the key issue of first sale *sua sponte*.

This matter comes before the Court on motion by Jazz, to remand this action to the Superior Court of New Jersey, for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c) and the rule outlined in In re Resorts Int'l, Inc., 372 F.3d 154 (3d Cir. 2004).  In the alternative, Jazz moves the Court to remand pursuant to the mandatory and permissive abstention provisions contained in 28 U.S.C. § 1334 (c)(1) and (2).  For the reasons set forth below, Jazz's motion will be granted.

## *FACTS/ PROCEDURAL HISTORY*

This Court explained the history of this case in great detail in a prior opinion issued in the companion case.  See Jazz Photo Corp. v. Dreier, LLP, et al., No. 05-5198, slip. op. (D.N.J. March 15, 2006) ("Jazz v. Dreir").  There is no need to reiterate those details.  Therefore the Court will explain only those facts necessary to decide this motion.

Jazz is currently undergoing liquidation pursuant to Chapter 11 of the U.S. Bankruptcy Code.  Jazz's bankruptcy is the result of a $30 million judgment entered against it in the case of Fuji Film Co. v. Jazz Photo Corp., 249 F.Supp.2d 434 (D.N.J. 2003) ("the Fuji matter").  In that

case, Jazz was held to have infringed Fuji's patent for Lens Fitted Film Packages ("LFFPs") (also referred to as "single use" or "disposable" cameras) because Jazz was engaged in the commercial business of importing used/ refurbished LFFPs and distributing them in the United States. While Jazz asserted the "repair" defense to patent infringement, Fuji contended that Jazz "impermissibly reconstructed" the LFFPs thereby infringing Fuji's patent. The decisive factor in the case was Jazz's failure to prove that its refurbished LFFPs were made from shells first sold in the United States. The District Court held that it was bound by the rule explained in the decision of the Court of Appeals for the Federal Circuit in Jazz v. ITC, which held that the repair defense to patent infringement is only applicable where the patent for the item being refurbished has been exhausted by "first sale" in the United States.

After the judgment was entered against it in the Fuji matter, Jazz filed its bankruptcy petition on May 20, 2003. Jazz subsequently appealed the District Court's decision. On appeal of the Fuji matter to the Court of Appeals for the Federal Circuit, Jazz argued for the first time that the first sale aspect of Jazz v. ITC was a novel rule of law and should be given "prospective only" effect under the precedent explained in Chevron Oil Co. v. Huson, 404 U.S. 97 (1971). The Court of Appeals for the Federal Circuit ruled that Jazz waived this argument by not raising it during the trial of the Fuji matter. See Fuji v. Jazz Photo Corp., 394 F.3d 1368, 1377 (Fed. Cir. 2005).

On April 11, 2005, Jazz filed its First Amended Disclosure Statement in the Bankruptcy Court. As part of its disclosure statement, Jazz listed a claim for malpractice against its attorneys in the Fuji matter:

> ...the debtor seeks authorization for Budd Larner... to represent it in

connection with... potential malpractice actions against the Debtor's former professional retained in the District Court action and the ITC matters (the "Malpractice Claims")... .

On May 16, 2005 Jazz filed a Complaint in the Superior Court of New Jersey, alleging malpractice against KG and the other attorneys who represented Jazz in the Fuji matter.  That case was removed to the District Court.  Soon after, Jazz moved for remand.  The remand motion was denied by this Court on December 20, 2005.  On March 15, 2006, this Court dismissed that portion of Jazz's Complaint alleging malpractice for failing to argue the prospective-only effect of Jazz v. ITC in the Fuji matter.  The dismissal was predicated on the inapplicability of the Chevron "prospective only" rule to Jazz in the Fuji matter, because the first sale rule explained by the Court of Appeals for the Federal Circuit in Jazz v. ITC was also applied to Jazz's co-defendants, Dynatec and Opticolor.

> In Jazz v. ITC, the Federal Circuit noted that "[o]ur decision applies only to LFFP's for which the United States patent right has been exhausted by first sale in the United States.  Imported LFFPs of solely foreign provenance are not immunized from infringement of United States patents by the nature of their refurbishment."  264 F.3d at 1105.  This narrowed the Federal Circuit's reversal of the ITC's decision and explained the "new rule of law" on which Jazz bases the relevant portion of its complaint.  That rule was initially applied to the three respondents which had taken the appeal of the original ITC decision.  Those three respondents were Jazz, Dynatec, and Opticolor.  If this rule of law was applied to them, then granting prospective-only application of the rule in Fuji v. Jazz would have been impermissible under the case law developed after Chevron.  The Court has only two available options: "pure prospectivity or full retroactivity."  Glazner, 347 F.3d at 1218.  The ruling in Jazz v. ITC applied not only to Jazz, but to the other respondents as well.  Any argument for prospective-only application would have been without merit.

> As a result, Defendants could not have committed malpractice for failing to argue an inapplicable rule of law.  Plaintiffs complaint, insofar as it alleges malpractice for Defendants' failure to argue for

4

prospective-only application of the Federal Circuit's ruling in <u>Jazz v.</u>
<u>ITC</u> fails to state a claim and will be dismissed on this basis.

<u>Jazz v. Dreir</u>, slip op. at 17 (D.N.J. March 15, 2006).  This Court declined to decide whether or

not the doctrine of "first sale" relied on by the Court in <u>Jazz v. ITC</u> was indeed a new rule of law

when the Court of Appeal for the Federal Circuit issued its ruling.

        Exactly one week after this Court dismissed Jazz's "failure to argue prospective only"

claim in <u>Jazz v. Dreier</u>, Jazz filed the Complaint in the instant action in the Superior Court of

New Jersey against KG.  Jazz now alleges that KG committed malpractice during its

representation of Jazz following the Court's Opinion in <u>Jazz v. ITC</u> by:

> (a) Failing to argue in the rehearing petition that the first sale aspect
> of <u>Jazz v. ITC</u> constituted a new and unexpected rule of law that
> should not be applied to the parties in that case and should be applied,
> if at all, in a purely prospective fashion. [and]
>
> (b) Failing to argue effectively in the rehearing petition that Fuji
> waived the right to obtain the benefit of the first sale aspect of <u>Jazz</u>
> <u>v. ITC</u> because Fuji did not raise the first sale argument before the
> ALJ, the ITC or the Federal Circuit.

The instant action was removed to this Court on April 18, 2006 upon Notice filed by KG

pursuant to 28 U.S.C. §§ 1334(b), 1441(b), and 1452 "because it arose and/or is related to the

Jazz Chapter 11 case."  In removing the instant action, KG cited this Court's Opinion of

December 20, 2005 in <u>Jazz v. Dreier</u>, denying Jazz's motion for remand, wherein the Court held:

> The malpractice claim is an asset owned by Jazz and if authenticated
> by trial, would become part of the liquidated assets of that
> corporation.  Judgment in favor of Plaintiff could conceivably affect
> the bankruptcy estate and the proceeds available for distribution to
> Jazz's creditors.  Where the malpractice action is this closely related
> to the bankruptcy matter, and has been initiated pre-confirmation, as
> in the present case, there exits sufficient nexus between the
> malpractice action and the Chapter 11 bankruptcy for this court to

possess subject matter jurisdiction.

Jazz now moves the Court to remand the instant matter back to the Superior Court of New Jersey.

## DISCUSSION

Plaintiff has moved to remand the instant malpractice action to the Superior Court of the State of New Jersey ("the state court"). Plaintiff cites three different reasons for remand: (1) lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c), (2) mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2), and (3) permissive abstention/ equitable remand pursuant to 28 U.S.C. § 1334(c)(1) and 28 U.S.C. § 1452(b).

I.      Scope of District Court Jurisdiction

"Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The district courts' "bankruptcy jurisdiction" potentially extends to four types of title 11 matters: "(1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11." In re Guild & Gallery Plus, 72 F.3d at 1175 (quoting In re Marcus Hook Dev.

Park, Inc., 943 F.2d 261, 264 (3d Cir.1991)).    The first three types are referred to as "core"

proceedings; whereas proceedings "related to" a case under title 11 are referred to as "non-core"

proceedings.  In re Resorts International, Inc., 372 F.3d 154, 162 (3d Cir. 2004). In the instant

action, KG has removed this case, in which Jazz alleges purely state law claims (attorney

malpractice), to the district court, "because it arose and/or is related to the Jazz Chapter 11 case."

However, it is apparent that the instant action neither arose in, nor is related to the Chapter 11

case.

II.      Whether the instant action arose in the Jazz Chapter 11 case

         Core proceedings are those that "invoke a substantive right provided by title 11" or that

by nature, could arise only in the context of a bankruptcy case.  Id.  In Jazz v. Dreir, this Court

held that Jazz's allegations of attorney malpractice against the Defendants in that case included

core proceedings over which this court had subject matter jurisdiction because: (1) the

malpractice claim in that case originated before confirmation and therefore constituted a "pre-

petition malpractice claim...passed along from debtor to trust;" and  (2) the complaint contained a

demand for declaratory judgment negating $500,000 in attorneys fees owed by Jazz to Dreir,

which constituted a counterclaim against a creditor.

> Where the malpractice action is this closely related to the bankruptcy
> matter, and has been initiated pre-confirmation, as in the present case,
> there exits sufficient nexus between the malpractice action and the
> Chapter 11 bankruptcy for this court to possess subject matter
> jurisdiction.

Jazz v. Dreir, Slip Op. at 10-11 (Dec. 20, 2005).  But for these factors, Jazz v. Dreir was a case

mainly involving a "common law malpractice action."  The instant action consists of a common

law malpractice claim, yet does not possess those factors conferring subject matter-jurisdiction

7

on this Court.

In the instant action, there is no compelling evidence suggesting that the malpractice claim originated before confirmation. Although KG cites Jazz's definition of the malpractice claims in its disclosure statement as evidence of its intent to proceed with the instant action, this vague reference, without support does not persuade the Court.[1] Additionally, there is no demand for declaratory judgment in the instant action. Nor can the instant malpractice action be considered a counterclaim against a creditor.[2]

The Court specifically rejects KG's argument that these two cases (Jazz v. Dreir and the instant action) essentially constitute the same action, and that the law of the case doctrine requires this Court to rule as it did in Jazz v. Dreir. In its prior opinion, this Court noted Judge Stern's remarks regarding the relationship between Jazz v. Dreir and the Jazz Bankruptcy Action:

> ...the essential legal malpractice case here has as its overriding characteristics, non-core aspects.
> ...
> this legal malpractice case was clearly contemplated in the disclosure statement, in the plan and in various motions, not the least of which was the motion which resulted in the retention of the Budd Larner firm to represent the debtor and then the trust in this case... It's been referenced to Resorts. Resorts was a case involving a post confirmation cause of action. There it was an accounting malpractice case. [In the present case] We're talking about an asset or would be asset of first debtor and then the succeeding liquidating trust, a pre-petition legal malpractice case... I believe that this Court has subject matter jurisdiction where the case was a clear asset passed along from the debtor to the trust.

Id. at 8-9. ____

---

[1] Jazz defined its malpractice claims as: "potential malpractice actions against Debtor's former professionals in the District Court Action and ITC matters."

[2] Although KG claims that jazz owes it $900 in attorneys fees, this de minimis amount does not qualify.

This Court based its prior opinion, in part, on these facts, and their distinction from the facts

explained in <u>Resorts:</u>

> [I]t is distinguishable in several ways.  Unlike <u>Resorts</u>, the
> malpractice claim in the present case originated before confirmation,
> and even before Jazz filed for Chapter 11 bankruptcy.

<u>Id.</u>

That distinction is clearly not present in the instant action.

       Despite KG's assertion, and despite the obvious similarities between the two cases (the

same  Plaintiff suing one of the same Defendants for failing to make a similar argument) the

instant action is a different case.  It was initiated post-confirmation, and there is no compelling

evidence showing that Jazz or the bankruptcy court contemplated the instant action prior to this

Court's dismissal of the "prospective only" portion of the complaint in <u>Jazz v. Dreir</u>.

Furthermore, the "failure to argue prospective only application" claim in <u>Jazz v. Dreir</u> no longer

exists.  This Court dismissed that claim.  The only malpractice claims that remain in <u>Jazz v. Dreir</u>

 concern decisions made during the trial of the <u>Fuji</u> matter.

       It appears in all likelihood that the complaint in the instant action was not contemplated

in advance, but instead was filed in response to the dismissal of the "failure to argue prospective

only" claim in <u>Jazz v. Dreir</u>.  If this claim had been contemplated in advance, Jazz would have

most likely brought it at the same time as the complaint in <u>Jazz v. Dreir</u>.  The instant action

clearly did not arise from the Jazz Chapter11 case.


III.    <u>Whether "related to" jurisdiction exists</u>

       When a case involves non-core proceedings, the district court may retain jurisdiction

where the proceedings are nonetheless related to a case under title 11 provided there is a close

nexus between the bankruptcy proceedings and the instant action.  As was the case in Jazz v.

Dreir, Jazz argues that litigating the instant malpractice action in this Court would unfairly

stretch this court's "related to" jurisdiction.

In Resorts, the Bankruptcy Court previously dismissed a Chapter 11 Litigation Trust's

malpractice claim against an accounting firm that provided it with tax advice and accounting

services after initiation of the bankruptcy action.  The Bankruptcy Court initially held that there

was a lack of subject matter jurisdiction where the action was instituted "post confirmation," and

dismissed the malpractice claim pursuant to 28 U.S.C. § 1447(c).  The District Court overturned

the Bankruptcy Court's decision and chose not to remand the case to the state court.  Binder v.

Price Waterhouse & Co. (In re Resorts Int'l. Inc.), No. 02-1333, Slip. Op. (D.N.J. Dec. 18, 2002).

 The District Court held that "the terms on which the Litigation Trust was created and its

practical role in the Plan lead to the conclusion that claims arising from professional misconduct

in the Trust's affairs are sufficiently related to the bankruptcy case to be within jurisdiction of the

Bankruptcy Court."  Id. at 19.  "Confirmation did not terminate the estate with respect to the

property vested in the Litigation Trust; and the Trust represented a partial continuation of the

estate.  Consequently, the jurisdiction of the bankruptcy court over proceedings arising from the

affairs of the Litigation Trust is not substantially different from its jurisdiction over similar

matters pre-confirmation, and it should have the power to hear claims of professional malpractice

in the administration of the Trust."  Id. at 12.

The Court of Appeals for the Third Circuit overturned the District Court's decision,

holding that:

"...we believe this proceeding lacks a close nexus to the bankruptcy plan or proceeding and affects only matters collateral to the bankruptcy process. The resolution of these malpractice claims will not affect the estate; it will have only incidental effect on the reorganized debtor; it will not interfere with the implementation of the Reorganization Plan; though it will affect the former creditors as Litigation Trust beneficiaries, they no longer have a close nexus to [the] bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to the litigation claims; and as stated, the jurisdictional retention plans cannot confer jurisdiction greater than that granted under 28 U.S.C. § 1334 or 28 U.S.C. § 157. For these reasons, the malpractice claims here lack the requisite close nexus to be within the Bankruptcy Court's "related to" jurisdiction post-confirmation."

Resorts, 372 F.3d at 169.

Like Resorts, the instant malpractice action was instituted post-confirmation. In the post-confirmation situation, the essential inquiry is whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction. Matters affecting the implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus. Id. Bankruptcy court jurisdiction "must be confined within appropriate limits and does not extend indefinitely, particularly after the confirmation of a plan and the closing of a case." Id. at 164. The instant action does not satisfy this requirement.

The instant action was instituted post-confirmation, at a time when the bankruptcy portion of the case was essentially completed. Furthermore, it does not even assert a claim for malpractice for services rendered during the administration of the bankruptcy estate, as was the case in Resorts. There is no significant counterclaim against any creditor as was the case in Jazz v. Dreier, and the Court is not convinced that this action was contemplated prior to confirmation. While this court is clearly familiar with the underlying fact pattern and the history of this case. The court does not have jurisdiction to consider this matter and must remand to the State Court.

11

## *CONCLUSION*

For all the reasons stated above, Plaintiff's motion to remand this matter to the Superior

Court of the State of New Jersey is granted.


/s/ Dickinson R. Debevoise
Dickinson R. Debevoise, U.S.S.D.J.


July 13, 2006